## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICKY SANABRIA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| CORPORAL BRACKETT, in his individual capacity, and JOHN DOE #1, in his individual capacity, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

### The Parties

1. Plaintiff Ricky Sanabria, Jr. ("Sanabria"), is a Maryland resident.

2. Sanabria was incarcerated at Howard R. Young Correctional Institution ("HRYCI"), located at 1301 East 12th Street, Wilmington, Delaware 19802, in July 2021. At the present time, he is not incarcerated.

3. Defendant Corporal Brackett (Brackett) was, at all times relevant, a corrections officer acting under the color of state law as an agent or employee of the Delaware Department of Correction.

4. Defendant John Doe (Doe) was, at all times relevant, a corrections officer acting under the color of state law as an agent or employee of the Delaware Department of Correction.

### Jurisdiction & Venue

5. This is a civil action for damages arising under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

1

6. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

7. Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

8. Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

### Lead Up to and Morning of July 7, 2021

9. Approximately two weeks prior to July 8, 2021, Kiyohn Carroll ("Carroll"), a 6'3" 280-pound man, was transferred to Sanabria's cell. Sanabria is a smaller man at 5'8" and 160 pounds. Upon information and belief, Carroll was incarcerated for raping men and women. In the short time between becoming cellmates and the July 8, 2021 incident, Carroll made several inappropriate advances towards Sanabria.

   a. Upon Sanabria completing his exercise regimen for the day, Carroll told Sanabria that Sanabria "could be a model."

   b. Sanabria was grooming himself after his shower one day, and Carroll said Sanabria looked good enough to take other men's women. Sanabria indicated to Carroll he did not like being talked to in that fashion.

   c. In a separate incident on the following day, while Sanabria exercised, Carroll grabbed Sanabria's wrists. Sanabria asked Carroll what he was doing and Carroll said he was just kidding. Sanabria knew, however, that Carroll was testing his strength and gauging Sanabria's reaction time.

10. These incidents left Sanabria fearful, unnerved, and concerned for his personal safety. Sanabria told Carroll he was going to request a cell transfer.

11. On the morning of July 7, 2021, at approximately 9:30 a.m., Sanabria expressed his concerns regarding Carroll's physical and verbal advances to Defendant Brackett via a note requesting cell relocation. The note indicated Sanabria was unsafe and uncomfortable in a cell with Carroll.

12. Approximately thirty minutes later, Brackett took Sanabria from his cell to the interview room. Sanabria explained his concerns, in particular about Carroll's sexual advances, and expressed a fear of imminent physical violence from Carroll. Sanabria once again expressed his desire to be relocated for his own safety.

13. At approximately 11:30 a.m., Brackett used the cell intercom to inform Sanabria he was to pack his belonging and move to a new cell. Sanabria complied with this order believing he was no longer in danger.

14. Within an hour of settling into his new cell, Sanabria was once again contacted via the cell intercom. Sanabria was informed the decision to relocate Sanabria was overridden by a higher-ranking officer, Defendant John Doe. Thus, Sanabria was returned to his original cell with Carroll.

15. Sanabria protested this removal to a corrections officer until he was threatened with OC spray and disciplinary consequences. Sanabria acquiesced to the command to return to his original cell under great duress.

16. While he was relocating, Brackett told Sanabria if he could hold out until the morning, Brackett would do his best to get Sanabria moved to a different cell the following day.

17.     For the remainder of July 7, 2021, Sanabria endured relentless questioning from Carroll regarding his relocation.  These questioning sessions were vigorous and appeared to Sanabria to be sinister.  Carroll left his shoes on, which, in Sanabria's experience in prison, meant that Carroll was going to attack Sanabria.  Sanabria, fearful of a sneak attack while he slept, spent the entire night awake to protect himself.

### The Attack on July 8, 2021

18.     On July 8, 2021, following breakfast, Carroll got back in the bunk with his shoes on, and Sanabria remained alert.

19.     At 9:00 a.m. on July 8, 2021, the sleep deprived Sanabria approached Corporal Graham to inquire about Brackett's promise to reassign his cell.  Graham informed Sanabria that his cell assignment remained the same—with Carroll.

20.     Once back in his cell, Sanabria, following customary inmate etiquette, asked Carroll if he needed anything from the cell before Sanabria defecated.  Carroll indicated that he indeed needed to retrieve an item from the cell.  Sanabria left Carroll to his affairs.

21.     Upon returning to the cell, Sanabria observed that Carroll was still in the cell meandering about without an apparent purpose.  Sanabria repeated his request to use the facilities privately which Carroll ignored.  Instead, Carroll began interrogating Sanabria about his desire to change cells.  At some point, Sanabria said he was uncomfortable sharing a cell with Carroll, and Carroll said "we'll have to do something about that" or something similar.  Attempting to avoid confrontation with Carroll, Sanabria turned to exit the cell.

22.     With his back turned, Carroll deftly wrapped a towel around Sanabria's throat and attempted to choke him.

23. Sanabria kicked off the wall and drove his back into Carroll to release the strangulating towel from his throat. Sanabria, fearing for his life, began swinging his fists at Carroll's head.

24. Undeterred, Carroll grabbed Sanabria by his dreadlocked hair and began to pull chunks of hair and scalp out while exclaiming, "I am going to pull all of your fucking dreads out." Carroll got control of Sanabria's head and took both men to the floor. Some of Sanabria's dreadlocks were pulled out.

25. During the struggle, Ricky was fighting to keep Carroll from mounting him, which would, Ricky feared, lead to Carroll raping him.

26. Carroll positioned himself behind Sanabria and bit the back of Sanabria's left ear. This mastication caused Sanabria to loudly call out and alert the guards.

27. Carroll continued to gnash until he severed a third of Sanabria's ear. Slick with blood and the hold on his ear removed, Sanabria escaped Carroll's onslaught and exited the cell.

28. The Critical Response Team then arrived on the scene and detained both Carroll and Sanabria.

29. At least five corrections officers then searched the area for the piece of Sanabria's ear that was removed. They were unsuccessful. Carroll stated that he was unsure whether or not he consumed the flesh.

### The Aftermath

30. Sanabria was subsequently treated at Christiana Hospital where he received several stitches and was referred to a reconstructive surgeon.

31. On July 9, 2021, Sanabria reported to the infirmary therapist that the partial amputation of his ear was "traumatizing" and that the incident was "all [he] could think about."

32. On July 12, 2021, Sanabria made a sick call to the infirmary complaining of a nine out of ten pain level from his ear wound.

33. Reconstructive surgery was scheduled for August 30, 2021 but was cancelled. Sanabria's surgery was rescheduled and cancelled twice more before it was performed.

34. After three months, on October 7, 2021, Sanabria underwent the first reconstructive surgery. A skin graft was taken from Sanabria's left shoulder and secured with fourteen staples onto the remainder of his ear. Upon returning to the infirmary, Sanabria reported a nine out of ten pain level.

35. On October 13, 2021, at Sanabria's follow up appointment, he reported ten out of ten pain in both his ear and shoulder. In fact, during the intervening week between appointments, Sanabria reported ten out of ten pain levels on three other days. Additionally, Sanabria reported concern that his ear is still bleeding and that the bleeding increases when he moves his head.

36. On October 27, 2021, Sanabria underwent a second reconstructive surgery for his ear at Wilmington Hospital.

37. On October 28, 2021, Sanabria was transferred back to the infirmary where he was treated for discharge and drainage from his ear. The doctor noted swelling and bruising and Sanabria reported a pain level of nine out of ten. This was the sixth time he reported a pain level of nine or higher in the two weeks leading to his surgery.

38. On October 29, 2021, during a routine mental health visit, Sanabria informed the interviewer he was suffering from a continued increase in flashbacks because the pain in his ear was a constant reminder of the attack.

39. On December 20, 2021, Sanabria stated his ear was still "nowhere near close to normal." He has resigned himself to this deformity and intends to cover his mangled ear with his hair in perpetuity.

### Damages

40. As a result of the deliberate indifference of Defendants Brackett and John Doe, Sanabria sustained the following damages:

   a. Fear and apprehension for his physical safety on July 7, 2021, when John Doe #1 instructed Brackett to re-move Sanabria back to his original cell;

   b. Bodily injuries, including permanent loss of approximately one-third of his left ear, permanent disfigurement, and shoulder injuries;

   c. Physical pain and suffering;

   d. Medical expenses related to treatment of his injuries;

   e. Deprivation of his rights secured by the Constitutions and laws of the United States of America and the State of Delaware;

   f. Mental and emotional stress and anxiety; and

   g. Inconvenience to and disruption of his life.

### COUNT I – VIOLATION OF EIGHTH AMENDMENT

### (Against Brackett in his Individual Capacity)

41. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

42. At all times relevant, Brackett was acting under color of state law.

43. Brackett knew of the severity of the threat posed by Carroll. A lay person would recognize the obvious difference in the physical discrepancies between the two men and the danger

that would pose. Brackett was in receipt of Sanabria's note outlining the reasonable fear of imminent physical harm. Brackett interviewed Sanabria regarding this note and found Sanabria's concern credible. Brackett's understanding of the threat is shown by his initial choice to immediately move Sanabria out of the cell.

44. Upon information and belief, Brackett knew Carroll was convicted of first-degree rape involving men.

45. Brackett knew or should have known that returning Sanabria to the cell with Carroll put Sanabria in grave danger as evidenced by his reassurance that he would attempt to relocate Sanabria the following day.

46. Sanabria had a right to personal safety and a right to be free from violence. Brackett knowingly or with deliberate indifference violated Sanabria's rights under the Eight Amendment to the United States Constitution and Article I, § 11 of the Delaware Constitution as secured by 42 U.S.C. §1983.

47. As a result of these Constitutional violations, Sanabria suffered the damages identified in Paragraph 40.

## COUNT II – VIOLATION OF EIGHTH AMENDMENT
### (Against John Doe in his Individual Capacity)

48. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

49. At all times relevant, John Doe was acting under color of state law.

50. John Doe knew of the severity of the threat posed by Carroll. A lay person would recognize the obvious difference in the physical discrepancies between the two men and the danger

that would pose. John Doe was aware of Brackett's assessment that Carroll was a danger to Sanabria.

51. Upon information and belief, John Doe either deliberately ignored the note given to Brackett and investigation Brackett made into the matter or John Doe reviewed Brackett's assessment and indifferently put Sanabria back in harm's way.

52. John Doe knew or should have known that returning Sanabria to the cell with Carroll put Sanabria in grave danger.

53. Sanabria had a right to personal safety and a right to be free from violence. John Doe knowingly or with deliberate indifference violated Sanabria's rights under the Eight Amendment to the United States Constitution and Article I, § 11 of the Delaware Constitution as secured by 42 U.S.C. §1983.

54. As a result of these Constitutional violations, Sanabria suffered the damages identified in Paragraph 38.

WHEREFORE Plaintiff Ricky Sanabria respectfully requests this Court:

A. Grant judgment in his favor and jointly and severally against Corporal Brackett and John Doe;

B. Award him special damages as he can prove;

C. Award him compensatory damages as he can prove;

D. Award him punitive damages;

E. Award him costs and attorneys' fees for prosecuting this action;

  F.  Award him pre- and post-judgment interest; and

  G.  Grant such other relief as the Court deems proper.

                   **JACOBS & CRUMPLAR, P.A.**

                   /s/ Patrick C. Gallagher
                   Patrick C. Gallagher, Esq. (DE Bar 5170)
                   750 Shipyard Drive, Suite 200
                   Wilmington, DE 19801
                   (t) (302) 656-5445
                   (f) (302) 656-5875
                   pat@jcdelaw.com
DATE: July 31, 2022         *Attorney for Plaintiff*